UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KERRY UHRICK, and <br> MARILYN UHRICK, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    CAUSE NO.: 1:04-CV-99-TS <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

The Plaintiffs, Kerry and Marilyn Uhrick, brought this suit against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The Plaintiffs allege that the negligence of a Veteran's Administration pharmacist and doctor caused injuries for which they should recover $1.5 million. This matter is before the Court on the Defendant's motion for partial summary judgment, motion to strike the Plaintiffs' expert testimony, and motion to strike the Plaintiffs' response brief.

**BACKGROUND**

On March 23, 2004, the Plaintiffs filed their two-count Complaint against the Defendant, the United States of America, under the Federal Tort Claims Act (FTCA). The Plaintiffs' first claim alleges pharmaceutical malpractice. They allege that from December 4, 1997, to February 1999, a pharmacist employed by the Department of Veterans Affairs erroneously filled Kerry Uhrick's prescription; instead of giving him Quinine, as prescribed by Dr. Daniel Santos, the pharmacist gave him Quinidine.  In Count two, the Plaintiffs allege that Dr. Santos also committed malpractice after he discovered the pharmacy's error. They contend that the abrupt discontinuation of Quinidine on

February 18, 1999, as directed by Dr. Santos, caused Kerry Uhrick to have a heart attack on February 20, and that Dr. Santos should have gradually decreased the Plaintiff's dosage of the incorrectly filled prescription. On September 10, 2004, the United States answered the Complaint.

The parties established discovery deadlines as contained in a Report of Parties Planning Meeting and the Court set dates for the final pretrial conference and trial. On May 27, 2005, the United States moved to extend the time to complete discovery, exchange expert reports, and file dispositive motions. The United States asserted that the Plaintiff had not yet retained an expert (even though the deadline for the Plaintiffs to provide the Defendant with expert reports had passed) and requested an extension of at least ninety days. The Defendant represented that the Plaintiffs had been contacted and agreed with the request. On June 3, 2005, the Plaintiffs filed a brief in support of extending the deadlines as requested by the Defendant. The Plaintiffs asserted that the discovery was voluminous and ongoing and that the Plaintiffs' counsel was still in the process of locating and gathering medical records and reports to provide to the Defendant. The Court granted the motion for extension and ordered the Plaintiff to make expert witness disclosures and deliver reports by August 30, 2005. The Defendant's deadline was extended to September 30.

On October 28, 2005, the United States moved for summary judgment on the claim involving Dr. Santos' abrupt cessation of Quinidine. The Defendant argued that there was no evidence that the Plaintiff suffered a heart attack or other cardiac event on February 20, 1999, or that the abrupt cessation of Quinidine was the proximate cause of any such injury. The Defendant also argued that Dr. Santos' actions did not fall below the applicable standard of care. In support of its motion, the Defendant pointed to the Plaintiffs' lack of expert testimony to support its claim that Dr. Santos' conduct fell below the applicable standard of care and was the proximate cause of the Plaintiff's

injuries.

After receiving the Defendant's Motion for Partial Summary Judgment, the Court vacated the November 7, 2005, final pretrial conference and December 6, 2005, jury trial. These dates were to be reset after the Court's consideration of the Defendant's Motion. Thereafter, the Plaintiffs requested, and were granted, extensions of time to respond to the Defendant's Motion.

On February 1, 2006, the Plaintiffs filed their response to the Defendant's Motion for Summary Judgment. In support of their position that summary judgment was not appropriate because a question of fact remained regarding whether the abrupt discontinuation of Quinidine caused compensable injury, the Plaintiffs submitted the affidavit of Dr. Mark S. Souder. In his Affidavit, Dr. Souder stated that it was his "medical opinion and belief that Kerry Uhrick suffered a cardiac incident which was related to his taking erroneously dispensed quinidine for a period in excess of one year and the abrupt cessation of the erroneously dispensed and ingested drug." (Souder Aff., ¶ 3.) Attached to the Affidavit were letters that Dr. Souder sent to the Department of Veteran's Affairs describing his position on the Plaintiff's medical condition and its cause.

On February 13, 2006, the Defendant moved to strike Dr. Souder's expert opinion pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1) because Dr. Souder had not been previously disclosed as an expert witness. The Defendant also moved to strike the Plaintiff's response to its Motion for Summary Judgment because it did not comply with the Local Rule 56.1's requirement to include a "Statement of Genuine Issues" with citations to admissible evidence. The Defendant requested, and was granted, an extension of time to file any reply to the Motion for Summary Judgment until after the Court ruled on its motions to strike. The Plaintiffs did not respond to the Defendant's motions to strike.

3

**DISCUSSION**

**A.      Disclosure of Expert Witnesses**

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert witnesses. Under Rule 26(a)(2)(A), a party is required to disclose the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. These disclosures should be in writing, signed by counsel, and served to opposing counsel. *See* Fed. R. Civ. P. 26(a)(4). In addition, an expert report must accompany the disclosure of any expert witness who is retained or specially employed to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(B). Expert witness disclosures must be delivered by the deadlines set by the trial judge under Rule 26(a)(2)(C) ("These disclosures shall be made at the times and in the sequence directed by the court.").

In this case, the Court set August 30, 2005, as the deadline for the Plaintiff's expert witness disclosures. The Plaintiffs were required to designate any experts by this date, even if these witnesses were already known to the Defendant through prior discovery. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004) (holding that even treating physicians and nurses must be formally designated as experts if they will provide expert testimony). The Plaintiffs did not designate any experts by the Court-established deadline, or by any other date. Nevertheless, on February 1, 2006, the Plaintiff submitted the Affidavit of Dr. Souder in response to the Defendant's Motion for Summary Judgment. In this Affidavit, Dr. Souder states an expert medical opinion regarding the cause of the Plaintiff's "cardiac incident." The Defendant argues that the Plaintiffs are precluded from using Dr. Souder's opinion in this litigation.

**B.      Exclusion of Testimony from Non-Disclosed Expert Witness**

Rule 37 provides that a "party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). The Seventh Circuit has held that "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 758 (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)).

Here, the Plaintiffs have not made any attempt to justify their failure to disclose Dr. Souder as an expert witness and the Court finds that their failure was without substantial justification. The necessity of expert testimony to prove the elements of medical malpractice in Indiana is well established. *See, e.g., Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000) (holding that a plaintiff in a medical malpractice claim must generally present expert testimony to "establish the applicable standard of care and to show a breach of that standard"); *Whyde v. Czarkowski*, 659 N.E.2d 625, 627 (Ind. Ct. App. 1995) (stating that failure to provide expert testimony regarding what a reasonably prudent physician would have done in treating the plaintiff will usually subject the plaintiff's claim to summary disposition). Moreover, "[w]hen the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary."*Daub v. Daub*, 629 N.E.2d 873, 878 (Ind. Ct. App.1994); *see also Muncie State Transit Auth. v. Smith*, 743 N.E.2d 1214, 1217 (Ind. Ct. App. 2001) (stating that "when the cause of the injury is not one which is apparent to a lay person and multiple factors may have contributed to causation, expert evidence on the subject is required."). It is not within a lay person's knowledge whether missing one dose of Quinidine, the drug that the Plaintiff had erroneously been taking for over one year, likely caused

his cardiac incident. It is not within a lay person's knowledge whether the Plaintiff's previous medical history, including a diagnosis of Persian Gulf syndrome, affected this causal connection. Therefore, the Plaintiff must present expert testimony on the issue of proximate cause.

The necessity of expert testimony was known and the identity and opinions of Dr. Souder were also known to the Plaintiff well before the deadline for disclosure. Dr. Souder contends that he was an attending physician in the emergency room on February 20, 1999, and the letters he sent to the Department of Veteran's Affairs on the Plaintiffs' behalf were drafted in 2000 and early 2001. The Plaintiffs' lawsuit has been pending since March 2004 and the deadline for disclosure of expert witnesses reports was extended from April 30, 2005, to August 30, 2005. After concurring with the Defendant's request for an extension, the Plaintiffs did not seek any further extensions of their own. The Plaintiffs have not justified their failure to disclose Dr. Souder as an expert witness.

The Plaintiffs' unjustified failure to disclose the identity of its expert witness was not harmless to the Defendant. Because Dr. Souder's identity was not disclosed by the deadline, the Defendant has been denied the opportunity to challenge his opinion under Federal Rule of Evidence 702, obtain rebuttal experts, and take depositions to retrieve information not available because of the absence of a report. *See Musser*, 356 F.3d at 757–78 (describing prejudice the defendant suffered because the plaintiff failed to designate potential fact witnesses already known to the defendant as expert witnesses). Because the Plaintiffs failed to disclose Dr. Souder as an expert, the Defendant had no opportunity to question him as such. Discovery was closed by the time the Defendant learned that the Plaintiffs intended to use Dr. Souder's opinion that the Plaintiff suffered a cardiac incident that was related to taking quinidine and then abruptly stopping his ingestion of the drug. The fact that the record is devoid of Dr. Souder's qualifications to render such an opinion and the basis for

6

his opinion highlights the harm that ensues when a party fails to designate its experts.

The Court finds that striking any testimony from Dr. Souder that involves his expert opinion, as opposed to any testimony derived from his role as an attending physician, is an appropriate sanction for the Plaintiffs' failure to disclose him as a witness who would render an expert opinion. The Defendant's motion to strike Dr. Souder's testimony is granted.[1]

Even if the Court considered Dr. Souder's opinion, the Plaintiffs would not avoid summary judgment on the record before the Court.

### C.     Summary Judgment

### 1.     *Standard of Review*

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v.*

---

[1] Although the Defendant does not argue it, the Court also notes that Dr. Souder's Affidavit was not notarized or made under penalty of perjury. *See* 28 U.S.C. § 1746.

*Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248–50. Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but

instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443. However, under Northern District of Indiana Local Rule 56.1(b), the Court is to assume that the facts claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence.

### 2. *Medical Malpractice Claims Under Federal Tort Claims Act*

The FTCA provides in part: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962). A case brought under the FTCA is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Richards*, 369 U.S. at 9–10. Here, the Plaintiffs' medical malpractice claim is controlled by the law of the state of Indiana.

To show medical malpractice in Indiana, a plaintiff must establish that the defendant (1) owed a duty to the plaintiff; (2) breached its duty by conduct falling below the standard of care; and (3) the breach proximately caused a compensable injury. *Musser*, 356 F.3d at 760 (citing *Whyde v. Czarkowski*, 659 N.E.2d 625, 627 (Ind. Ct. App. 1995)). Expert testimony is required to establish the applicable standard of care and to show that the conduct fell below that standard of care. *Id.* "Where this expert testimony is presented in the form of an affidavit, the affidavit must set forth that

the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care is, and that the defendant's treatment of the plaintiff fell below that standard of care." *Lusk v. Swanson*, 753 N.E.2d 748, 753 (Ind. Ct. App. 2001) (citing *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind. Ct. App. 1995)). Dr. Souder's Affidavit is silent as to the standard of care. He did not state the standard of care that a reasonable doctor would employ in deciding whether to abruptly or gradually cease an erroneously digested medication. In contrast, the Defendant's expert, Dr. Hanley, rendered an opinion regarding the appropriate standard of care. His opinion took into account the nature of the drug at issue and its dosage at the time Dr. Santos discovered that the Plaintiff was not receiving the drug he prescribed:

> Tapering a dose of one tablet per day of a medication usually given three to four times per day appears somewhat illogical, since the purpose of tapering is to gradually reduce the dose to avoid a rebound effect. Since the drug is not known to cause rebound effect, I can see no reason to taper it. Moreover, the dose is already low (1/3 to 1/4 of the usual dose) and might be considered already "tapered." Hence the actions of Dr. Santos in not instructing a gradual taper of the dose fall within the standard of care.

(Def.'s Mem., Ex. 10.) Because the Plaintiffs do not present expert testimony regarding the applicable standard of care, there is no conflict regarding the standard of care and no genuine triable issue whether Dr. Santos failed to act as a reasonably prudent physician in the care he provided to the Plaintiff. *See Simms*, 651 N.E.2d at 350 ("If medical expert opinion is not in conflict regarding whether the physician's conduct met the requisite standard of care, there are no genuine triable issues.")[2]

---

[2] The Plaintiffs assert in their response brief that Dr. Souder noted in his Affidavit that the applicable standard of care would have been to slowly discontinue the inappropriate drug. This misconstrues Dr. Souder's statement. Although he opined that the Plaintiff suffered a cardiac incident related to taking the erroneously dispensed Quinidine for over one year and its abrupt cessation, this is a conclusion regarding causation, which is a separate element of negligence. Dr. Souder's Affidavit says nothing of the requisite standard of care, or the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or

10

Even if the Court takes Dr. Souder's Affidavit into account, the Plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to their malpractice claim, on which they will bear the burden of proof at trial. Therefore, the Defendant is entitled to partial summary judgment.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Strike Expert Opinion [DE 42] and the Defendant's Motion for Partial Summary Judgment [DE 28] are GRANTED. The Defendant's Motion to Strike the Plaintiffs' Response [DE 44] is DENIED as MOOT. Count I of the Plaintiffs' Complaint remains pending. A telephonic status conference is set for Thursday, September 14, 2006, at 10:00 a.m.

SO ORDERED on September 12, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

similar circumstances. This is not a case where the physician's allegedly negligent act, the abrupt cessation of Quinidine, is so obviously a breach of the appropriate standard of care that expert testimony is unnecessary. *See Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005) (explaining that cases involving "common knowledge" or "*res ipsa loquitur*" are exceptions to expert testimony requirement).

The Plaintiffs also argue that there was no dosage that would have been therapeutic or subtherapeutic under a situation where an individual is taking a heart electrical system altering drug, such as Quinidine. However, the Plaintiffs do not cite to any evidence in the record in support of this statement. Thus, it cannot be used to create a genuine issue of material fact.